The City of Atchison, C. J. Drury, as *City Treasurer of the City of Atchison*, and James A. Loper, as *County Treasurer of Atchison County*, v. The State of Kansas, *ex rel. J. F. Tufts, as acting County Attorney of Atchison County.*—Adam Dilgert and Michael Wagner, *partners as Dilgert & Wagner*, and John Peterson v. The State of Kansas, *ex rel. J. F. Tufts, as acting County Attorney of Atchison County.*—The Atchison National Bank of Atchison v. The State of Kansas, *ex rel. J. F. Tufts, as acting County Attorney of Atchison County.*

Illegal Tax *to Pay Bridge Bonds; Payment, Not Enjoined by The State.* Where a city, without authority of law, caused a tax to be levied and extended upon the tax-roll for the purpose of creating a fund with which to pay certain bonds theretofore issued and delivered in payment of bridges that had been built therein, and after the tax-roll had come to the hands of the county treasurer for the collection of the taxes a number of the tax-payers of the city voluntarily paid the illegal tax thus levied, *held*, that the public has no such interest in the money thus paid as will authorize the state to interfere and to maintain an action in the name of the state enjoining the treasurer from paying out the money so received by him, and from disbursing it in accordance with the will of those who paid the same.

*Error from Atchison District Court.*

ACTION for an injunction, brought on December 31, 1884, in the name of *The State of Kansas*, on the relation of James F. Tufts, acting county attorney of Atchison county, against *The City of Atchison, Charles J. Drury, as City Treasurer of the city of Atchison, Dilgert & Wagner, John Peterson, James A. Loper, as County Treasurer of Atchison county,* and *The Atchison National Bank.* The petition filed by the plaintiff, omitting the caption, title and exhibits, is as follows:

"*First:* The defendant, the city of Atchison, is a duly incorporated and organized city of the first class, in the county of Atchison and state of Kansas, and defendant Charles J. Drury is the duly appointed, qualified and acting city treasurer of the city of Atchison, and Adam Dilgert and Michael Wagner are partners doing business under the style and firm-name of Dilgert & Wagner; James A. Loper is the duly elected, qualified and acting county treasurer of Atchison county, state of Kansas; and the Atchison National Bank of Atchison, Kansas, is a national banking corporation, duly organized according to law.

"*Second:* Several property-owners of the city of Atchison, having large property interest therein, upon which they annually pay large sums in taxes, are complaining against the certain levies for taxes for the year 1884, and certain parts and portions thereof, made by the city of Atchison, and questioning the legality of certain levies of the city of Atchison as hereinafter fully set out, and object to paying their proportion of the same; and many other tax-payers of said city are uncertain what parts or portion of their taxes are legal or illegal, and declining to pay such as they consider to be illegal.

"*Third:* Among the taxes levied on, to wit, the 18th day of August, 1884, by the city of Atchison, which plaintiff alleges has for more than one year last past been a duly incorporated city of the first class, in said county of Atchison, and which were certified to the county clerk of said county, to be placed upon the tax-rolls of said county for said year 1884, there is a tax which is known as a tax for 'special bridge fund,' eight mills on each $1 of the taxable property of said city of Atchison, which was levied by ordinance No. 545 of said city of Atchison, passed on the 24th day of April, 1884, and approved by the mayor of said city, April 25, 1884, and

which is an ordinance appropriating the sum of twenty-five thousand dollars ($25,000) for the building of certain bridges in the city of Atchison, and providing for the issuing of bonds to pay for the same, a copy of which said ordinance so passed is hereto attached and made a part hereof, marked 'Exhibit A.'

"*Fourth:* The said election as provided for in said ordinance, was held at the city of Atchison on, to wit, the 14th day of May, 1884, in pursuance of a proclamation of the mayor of said city of Atchison, of date the first day of May, 1884, and published in the Atchison *Daily Patriot,* a daily newspaper printed and published in the city and county of Atchison, and of general circulation therein, from the first day of May to the 10th day of May, 1884, both of said days inclusive, and not otherwise, at which said election, although the qualified voters of said city of Atchison exceeded in number three thousand, there were cast only six hundred and fifty-nine votes, of which number 487 votes were cast ratifying ordinance No. 545, authorizing the sum of $25,000 for the building of bridges, and 172 votes were cast against ratifying ordinance No. 545, authorizing the sum of $25,000 for building of bridges; and said votes were duly canvassed on, to wit, the — day of ——, 1884, by the proper authorities, and such proposition voted for at said election was duly declared carried; and plaintiff here attaches said proclamation of said mayor of said city of Atchison, and makes the same a part of his petition herein, marked 'Exhibit B.'

"*Fifth:* Said bonds specified in said ordinance, and voted for at said election, were duly issued by the said city of Atchison to said defendants, Dilgert & Wagner and John Peterson, and are now in the hands of said defendants last named, and of divers and sundry other persons to said plaintiff unknown.

"*Sixth:* On the 7th day of June, 1884, the contracts for said bridges were let by said city of Atchison as follows, to wit: Park street bridge, to Dilgert & Wagner, $4,765; Tenth street bridge, to Dilgert & Wagner, $3,575; Sixth street culvert, to Dilgert & Wagner, $11,500. The building of the following culverts to John Peterson: Culvert on Kearney street, $1,675; culvert on Riley street, $1,100; culvert on Laramie street, $600; culvert on Commercial street, $900; culvert on Seventh street, $700.

"*Seventh:* On the 18th day of August, 1884, said city of Atchison, by ordinance No. 564, made its levy for taxes for all purposes for the fiscal year 1884, amounting in the aggregate to 1.45 per cent. upon each $100 of the taxable property of

said city of Atchison, and which was duly certified to the county clerk in manner as hereinbefore stated, and now appears on the tax-roll of said county for the year 1884, a copy of which ordinance is hereto attached and made a part hereof, marked 'Exhibit C.'

"*Eighth:* The levy of taxes by the city and county of Atchison for the year 1884, for all purposes, on property in said city of Atchison, is 4.78 per cent. on each one hundred dollars of the taxable property of said city of Atchison, as fully appears by a statement of said taxes, as printed on the back of the tax receipt for said Atchison county for said year 1884, a copy of which said statement is hereto attached and made a part hereof, and marked 'Exhibit D.'

"*Ninth:* The assessed value of all taxable property in said city of Atchison for the year 1884 was $3,147,160, and the indebtedness of said city of Atchison at said time was $——.

"*Tenth:* Said levy for special bridge fund, eight mills on the dollar of taxable property of said city of Atchison, for the year 1884, as a special tax, is illegal, unauthorized, excessive, oppressive, unconstitutional, and wholly void, and the levy thereof by said city of Atchison as a levy for special taxes was illegal, unauthorized, excessive, oppressive, unconstitutional, and wholly void, and any collection of said tax by any officer would be illegal, unauthorized, and wholly void, and the payment of said tax, or any part or portion thereof, to the owners and holders of said bonds, or to the contractors for said bridges, would be illegal, unauthorized, excessive, and wholly void, and would be diverting the tax levied for 'general improvement' in a manner wholly illegal, unauthorized, unconstitutional, and void, and would tend to largely increase the taxes of said city, both for said year 1884 and for the year 1885, and do great and irreparable injury to the public.

"*Eleventh:* Said plaintiff further alleges that said tax of eight mills for 'special bridge fund' is a tax for general improvement under the laws of the state, and exceeds by two mills the limit allowed by law to cities of the first class for annual levy of taxes for general improvement, which is six mills on the dollar of the taxable property of said city of Atchison; the said city of Atchison, as hereinbefore alleged, after levying said tax of eight mills for special bridge fund, also levied a tax of six mills on the dollar of the taxable property of said city of Atchison, for said year 1884, for 'general improvement' as hereinbefore alleged, which is the limit allowed by law therefor; the aggregate of all taxes by the said city of

Atchison for said year 1884, for all purposes excepting for 'school,' 'general revenue,' 'interest on school bonds,' and 'sinking fund,' 'school bonds,' and 'water-work contract,' was 2.30 per cent. on the $100 of the taxable property of said city of Atchison, and exceeds by three mills on the dollar the limit prescribed by law for said levy, which is two per cent. on the one hundred dollars of the taxable property of the said city of Atchison; if said tax of eight mills on the dollar for 'special bridge fund' is illegal, even to the extent and amount of six mills thereof, that is a tax for general improvement, and any sum or amount of taxes collected by reason thereof would be a part of the general improvement fund of said city of Atchison for said year 1884, and by reason thereof said subsequent levy by said city of Atchison of six mills for 'general improvement' for said year 1884 is wholly illegal, unauthorized, excessive, unconstitutional, and void; and if said levies of said city of Atchison, for said year 1884, of eight mills for 'special bridge fund' and six mills for 'general improvement' are each thereof legal and valid, then the said aggregate levy by said city of Atchison, for 1884, for all purposes, excepting for all school purposes and for water-work contract, is illegal, excessive, unauthorized, and wholly void to the extent of three mills on the dollar of the taxable property of said city of Atchison, for said year 1884, for the reason that the limit of such levy as prescribed by law is two per cent. on each one hundred dollars of said taxable property of said city for said year.

"*Twelfth:* A number of the large property-owners and tax-payers of said city of Atchison are refusing to pay certain parts and portions of said tax levy of 3.50 per cent. on each one hundred dollars of the taxable property of said city of Atchison for said year 1884, and some of said large property-owners and tax-payers of said city of Atchison have refused to pay said tax of eight mills on the dollar, levied as aforesaid by said city of Atchison for 'special bridge fund,' and have tendered to the county treasurer of said county of Atchison, who is the legal collector of said tax, and of all other taxes of said Atchison county, all their legal taxes for said year 1884, excepting, however, said tax levied by said city of Atchison 'for special bridge fund,' and which they refused to pay, which tender, duly made, was refused by said county treasurer; and thereafter said parties so tendering payment of said taxes have filed their suits in this court to determine the legality of the

said tax for 'special bridge fund,' and said suits are now pending in this court, and reference is hereby made to the same.

"*Thirteenth:* In addition to said suits so brought as aforesaid to determine the legality of said tax for 'special bridge fund,' these large property-owners and tax-payers refuse to pay said tax for 'general improvement'—six mills on the dollar—levied as aforesaid by said city of Atchison for said year 1884, and still others refuse to pay the said excess of three mills in the said aggregate levy by said city of Atchison for said year 1884, as hereinbefore fully set out; and said persons so refusing to pay each of said levies for 'general improvement'—six mills—and said excess of three mills in said aggregate levy. for all purposes by said city of Atchison for said year 1884, threaten, and are about to commence, suits to determine the legality of said respective levies; and by reason thereof there is danger of the courts and public officers of said county of Atchison being unduly burdened by suits of divers kinds, and the public would be compelled to defend numberless suits; and by reason of said controversies, as hereinbefore alleged, few, if any, persons would bid at the tax sale of lands and lots hereafter to be sold for the delinquent taxes of said year 1884, and said county and the public would suffer great pecuniary loss by reason of the premises; and for the further reason that a large amount of taxes is now in litigation, and unpaid; and by reason of the litigation aforesaid a still larger number of persons and tax-payers of said city of Atchison will refuse to pay the second half of their taxes for said year 1884, and thereby greatly incumber the affairs of said county and the public, and by reason thereof produce great and irreparable injury.

"*Fourteenth.* Plaintiff adopts count thirteen as a part hereof, and further alleges that the only illegality in said levies for said taxes of 1884, is in said levy of six mills for 'general improvement,' as in 'Exhibit C,' hereto attached, and an excess of two mills on the dollar in said levy of eight mills on the dollar for 'special bridge fund,' but that said levy of eight mills is, if anything, a levy for 'general improvement,' and is the first and only legal levy for 'general improvement,' and all the taxes collected under said levy of eight mills belong to the general improvement fund of said city of Atchison for said year 1884.

"*Fifteenth:* Plaintiff adopts count fourteenth as a part hereof, and further alleges that the holders of said special bridge

bonds should not be paid out of said special bridge fund, or the general improvement fund of said city of Atchison, for the reason that said special bridge bonds are wholly illegal, unconstitutional, excessive, unauthorized and void, and void in the hands of any person or persons now holding the same, for the reason that: ($a$) Said ordinance No. 545, 'Exhibit A,' did not properly order said work done, and the ordering of said work and the building of said bridges is wholly unconstitutional, illegal, unauthorized, and void; ($b$) the election of the qualified voters under said ordinance was not held at any time or date authorized, and is wholly illegal and void, and the said election and pretended ratification of said ordinance No. 545 is wholly unconstitutional, illegal, and void; ($c$) no proper notice of the time and place of holding said election was given as required by law; ($d$) the letting of said contracts, as hereinbefore alleged in count sixth, was in excess of the limit prescribed by law, and in excess of the sworn estimate thereof, as furnished by the city engineer of said city of Atchison, as required by law, and the contracts so let are illegal, excessive, and wholly void, and all of said special bridge bonds, issued in excess of the amount of the cost of each said bridges, and the estimate of the said city engineer therefor, are wholly unconstitutional, excessive, illegal, unauthorized, and void; ($e$) said bonds are illegal, excessive, and wholly void, for the reason that the bids received therefor were made by said contractors as well as the estimate of said city engineer therefor, in view of the receiving bonds instead of cash, as should have been done, and thereby the cost of said bridges was increased fully thirty per cent. over what said bids would have been if payment therefor had been made in 'cash,' as the usual difference in such work done for cash and bonds is fully thirty per cent. in favor of cash work.

"*Sixteenth:* Many persons have now paid their entire taxes of 1884 to said county treasurer of said Atchison county, Kansas, and if any of the several levies hereinbefore set out are hereafter decided to be illegal, and such illegal taxes are not theretofore paid on all the property in said city of Atchison for said year 1884, a grievous wrong and irreparable injury would be done such persons who have or may hereafter pay such taxes, as all of said illegal levies not paid would be again levied by said city of Atchison for the taxes of 1885, and would become part of the indebtedness of said city, for which taxes would be levied in 1885, and said parties so paying all of their taxes for the year 1884 would be com-

25—34 KAS.

pelled to pay more than their just proportion of taxes for said year 1885.

"*Seventeenth:* If said tax for special bridge fund was levied and is collected as a special tax, the said defendants, the city of Atchison, and Charles J. Drury, as city treasurer of the city of Atchison, state of Kansas, are not entitled to receive the same, or to hold and use the same as a special tax, or to therewith pay the present holder of said special bridge bonds; and said Charles J. Drury, city treasurer, is the president of said defendant, the Atchison National Bank, which bank now owns and holds a large amount of said special bridge bonds.

"*Eighteenth:* Plaintiff further alleges that defendants threaten and are about to pay so much of the special bridge bonds as become due January 1, 1885, unless commanded to refrain therefrom by this court, and defendants Dilgert & Wagner and John Peterson and the Atchison National Bank are threatening and attempting to dispose of such illegal special bridge bonds as are now held in whole or in part by them, and are endeavoring to unload the same on persons unacquainted with the illegalities and legal controversies connected therewith, and thereby produce great and irreparable injury.

Wherefore, plaintiff asks judgment herein that defendants, the city of Atchison, Charles J. Drury, as city treasurer of said city of Atchison, and James A. Loper as county treasurer of Atchison county, Kansas, be commanded to refrain from demanding payment of or receiving any taxes collected or that may hereafter be collected on account of said levy of taxes for special bridge fund, the same being a tax of eight mills on the dollar of the taxable property of the said city of Atchison for said year 1884, and to refrain from paying out any money by them received on tax levy of the city of Atchison for said year 1884, on what is known as special bridge fund tax, eight mills on the dollar, and to refrain from paying any of the special bridge bonds, for the payment of which said tax was levied, until the further order of this court, and that said defendants Dilgert and Wagner and John Peterson and the Atchison National Bank be commanded to refrain from selling or attempting to sell, or transferring or attempting to transfer, or hypothecating or otherwise parting with the ownership, possession or control of the special bridge bonds received by them, until the further order of this court; and that upon the final hearing hereof, that said ordinance levying said tax of eight mills for special bridge fund, and that said levy and said special bridge bonds, and each thereof, be adjudged and de-

clared wholly illegal, excessive, unauthorized, unconstitutional, and void; and that the court grant such other and further and proper relief as may seem just and equitable, with costs of suit."

At the hearing upon the verified petition the court granted a temporary injunction commanding the city of Atchison, the city treasurer and the county treasurer, to refrain from paying out any money received by them, or to be received, on the tax levy made by the city of Atchison for the year 1884, and known as the "special bridge fund," and to refrain from paying any of the special bridge bonds, for the payment of which said tax had been levied. The defendants subsequently moved to set aside and vacate the temporary injunction, for the reason that the plaintiff was not entitled, under the pleadings, to an injunction, or to the relief prayed for, and because the plaintiff had no interest in the subject-matter of the controversy. This motion was overruled, and excepted to. Defendants then separately demurred to the plaintiff's petition, upon the grounds, first, that the petition does not state facts sufficient to constitute any cause of action against the defendants; second, that the plaintiff has no legal capacity to sue; third, that there is a defect of parties plaintiff; fourth, that there is a defect of parties defendant; fifth, that several pretended causes of action are improperly joined. These demurrers were considered and overruled, when, upon application of the defendants Dilgert & Wagner, John Peterson, and the Atchison National Bank, they were allowed further time to answer; but the city of Atchison, Charles J. Drury, city treasurer, and James A. Loper, county treasurer, declined to plead further, and they electing to stand upon the demurrers which they had filed, the court thereupon rendered judgment against the last-named defendants for costs, and decreed: "That they and each of them be and they are perpetually enjoined from demanding payment of or receiving any taxes heretofore collected or that may hereafter be collected on account of the said levy of tax for special bridge fund, the same being a tax of eight mills on the dollar for the year 1884; and are

enjoined from paying out any money by them hereafter received on tax levied of the city of Atchison for said year, on what is known as the 'special bridge fund' tax." The defendants, and each of them, excepted to the rulings mentioned, and bring the case here for review.

*Everest & Waggener,* for plaintiffs in error Dilgert & Wagner, John Peterson, and The Atchison National Bank.

*J. F. Tufts,* acting county attorney, for The State; *L. F. Bird,* of counsel.

The opinion of the court was delivered by

JOHNSTON, J.: On April 24, 1884, the city council of the city of Atchison enacted an ordinance appropriating $25,000 with which to build certain bridges in the city; and as there was no money in the treasury for that purpose, it was therein provided that the proposition of issuing the bonds of the city in the amount of $25,000, to be used in payment of the bridges, and the levy of a special tax to pay such bonds, should be submitted to the qualified voters of the city for their ratification or rejection. In accordance with the provisions of the ordinance, the election was held on the 14th day of May, 1884, and upon the canvass of the vote by the proper authorities, it was found and declared that the proposition had been carried. The city then entered into contracts with the defendants Dilgert & Wagner and John Peterson for the construction of the bridges, and issued and delivered the bonds that had been voted in payment therefor. Afterward the city levied and caused to be extended upon the tax-roll a special tax of eight mills on the dollar of the taxable property of the city, for the purpose of paying the bridge bonds. The county treasurer obtained the possession of the tax-roll and proceeded to collect this tax, and had collected a considerable amount thereof, when on December 31, 1884, this action was brought in the name of the state of Kansas, by the acting county attorney of Atchison county.

It was alleged by the plaintiff, as will be seen in the peti-

tion heretofore set out, that the bonds issued for the building of the bridges were for many reasons unauthorized by law, and that the tax levied for the payment of the bonds was illegal and void; and the plaintiff prayed the court to enjoin the disbursement of the money collected, or to be collected, upon such levy. To this extent a temporary injunction was granted; and upon the exceptions to the refusal of the court to vacate the temporary injunction, and to the ruling of the court upon the demurrers to plaintiff's petition filed by defendants, they come here by their several petitions in error, and raise the question that the state of Kansas has no special interest in the subject-matter of the controversy, and therefore cannot maintain this action. In the determination of this question we must assume the truth of all proper allegations in plaintiff's petition; and for the purposes of this case we will assume, but not decide, that the tax in question, a portion of which has been collected, is excessive, illegal, and void. It is to be noticed that the contention in the case is in regard to the disposition of the money arising from the alleged illegal levy. The plaintiff does not not seek to stay the hand of any of the officers in the further collection of the tax, but only asks what the district court granted, namely, that—

"The defendants be enjoined from demanding payment of or receiving taxes heretofore collected or that may hereafter be collected on account of said levy of taxes for special bridge fund, the same being a tax of eight mills on the dollar for the year 1884; and enjoined from paying out any of the money by them hereafter received on tax levy of the city of Atchison, of what is known as the special bridge fund tax."

Conceding, then, that the tax is illegal, what interest has the state of Kansas in the controversy? If private rights and private interests only are involved, then the state cannot maintain the action. It can only be brought by the party who is beneficially or specially interested in the subject-matter. This is not a case to prevent a corporation or its officers from violating the law, or from abusing the powers conferred upon them by the law. The bonds alleged to be unauthorized and illegal

have long since been executed and delivered. The bridges, for the payment of which the bonds were issued, have been built and paid for by the city. The levy of taxes said to be illegal has been made and extended upon the tax-roll, and so far as the city is concerned it has consummated what are alleged to be illegal and unauthorized acts. It seems to us that the community at large had no special interest in the relief prayed for, and was not concerned as to the disposition of the fund which certain individuals had voluntarily paid in to be applied in payment of these bonds. There is a striking analogy between this case and that of *The State, ex rel., v. McLaughlin*, 15 Kas. 228. There, certain bonds alleged to be illegal had been issued by a school district, and a levy had been made to pay them off, and the proceedings had advanced so far that the county treasurer had possession of the tax-roll and was proceeding to collect with the other taxes the tax for the payment of the bonds, when the state interfered, upon the relation of the attorney general, and asked that the county treasurer be enjoined from taking any further proceedings in the collection of that tax. In speaking of the right of the state to sue, the court remarked that —

"It is obvious that this interference on the part of the state is unnecessary for the protection of any rights. It is not a case where, but for the intervention of the state, an irremediable wrong would be perpetrated. Conceding the bonds to be void, each and every tax-payer has ample protection by an action of injunction. Nor is a multiplicity of suits necessary. The tax, as a tax, being illegal, all the tax-payers may unite in a single action. (*Hudson v. Comm'rs of Atchison Co.*, 12 Kas. 140.) It is apparent too, that no action of the corporation, the school district, is sought to be prevented. . . . It is obvious that the state as a state has no direct interest in this controversy, any more than a controversy between individuals. The payment of these bonds may be illegal, but their payment works no greater wrong to the state than the payment by a single individual of an illegal debt. The single individual may, if he chooses, by appealing to the ordinary proceedings of the law, protect himself against such illegal payment. So may the many tax-payers."

Here, the complaint is not made by the city nor by the tax-payers. Probably for the purpose of showing an interest in the public, the plaintiff alleges that some of the tax-payers are in doubt about the legality of the tax, and are questioning and refusing to pay the same. If this be true, and they desire to prevent its collection, their remedy is ample and complete, as is shown by the decision in *The State, ex rel., v. McLaughlin,* supra. A tax-payer, or many tax-payers united, may maintain such an action. In such a case the action would be between parties actually and specially interested. A multiplicity of suits could thereby be avoided, and the exact questions sought to be raised in this case could be fully determined.

The point made that the county may be embarrassed by reason of the objection to the tax, and the failure of the tax-payers to pay the same, and the probable lack of bidders at the tax sale thereafter to be held, is without force in this proceeding. It appears that the special bridge-fund tax is separate and distinct from all other levies, and the tax-payer can therefore distinguish, if he chooses, the legal from the illegal tax. But more than that the plaintiff does not desire, or at least is not asking to restrain further proceedings in the collection of the tax. In fact, by the petition of the plaintiff, it is assumed and evidently intended that the county treasurer shall continue to collect the tax, and shall sell the property if necessary to accomplish that end. He asks that the county treasurer shall hold and not pay out the money *hereafter* collected under such levy.

As heretofore stated, the real controversy in the case is in regard to the disposition of the money which parties have voluntarily paid, or may pay, to the county treasurer for a specific purpose. It is true that the plaintiff, in connection with the prayer to restrain the disbursement of the money, asks that the bonds be declared void; but it is admitted that they have been already issued and delivered, and it is conceded that there is authority in the city to issue bridge bonds, and while the bonds may not have been issued in conformity with such authority, yet it does not appear from the allegations of

the petition that they are void in the hands of those holding them. This question, like the others, can be determined in an action between parties interested. However, this was not the real object of the proceeding, but as stated in the argument of the plaintiff in this court, it is an action to prevent the illegal payment of money, and was not brought to prevent the collection of the taxes. The plaintiff argues the case upon the theory that the money in controversy is a public fund, and therefore its application is a matter of public concern; but if the levy was made without authority of law, as the plaintiff alleges, the money which the tax-payers choose to pay thereunder does not constitute public revenue. Under that theory, there was no legal obligation resting upon the tax-payers to pay the money, and that which they did pay does not constitute a public fund in which the community at large has any interest. Its disposition is a matter of private interest between the holder of the bonds and the tax-payers

<div style="margin-left:2em">Illegal tax to pay bridge bonds; payment, not enjoined by the state.</div>

of the city. So that in no view which can be taken of the case can we say that there is such a public interest as will authorize the state to interfere, or to maintain the action. ( *The State, ex rel., v. Mc-Laughlin,* supra; *Ewing v. Board of Education of Jefferson City,* 72 Mo. 436; *Attorney General v. Salem,* 103 Mass. 138; *People v. Clark,* 53 Barb. 171; *Attorney General v. Burrell,* 31 Mich. 25; *People v. Booth,* 32 N. Y. 397.)

Indeed, it would seem from the showing made by the plaintiff, that even the tax-payers could not maintain an action to recover from the county treasurer the money which they have paid. It appears to have been a free and voluntary act upon their part, and it has been settled by the repeated decisions of this court that money thus voluntarily paid cannot be recovered by the individual paying the same. (*Phillips v. Jefferson Co.,* 5 Kas. 412; *Wabaunsee Co. v. Walker,* 8 id. 431; *K. P. Rly. Co. v. Comm'rs of Wyandotte Co.,* 16 id. 587; *Sapp v. Comm'rs of Brown Co.,* 20 id. 243; *Thimes v. Stumpff,* 33 id. 53.)

If the action brought by the plaintiff could be maintained, the peculiar dilemma is presented of inferentially authorizing

the defendant James A. Loper to receive all moneys which persons choose to pay on account of the bridge bonds, and after its receipt to lock the same up in his hands so that it cannot be applied in payment of the bonds as intended by those who contributed it, and cannot be applied or paid out by him on any account nor for any purpose. The citizens of Atchison may, if they see fit, absolutely donate their money to the city or to any individual, and no reason is seen why they cannot, if they desire to do so, contribute their money to be applied upon the bonds issued in payment of the bridges that have been constructed in the city. It would seem in such a case that the defendant Loper would be regarded as a trustee for the individuals paying the same, and it would therefore be his duty to apply the money so received in accordance with the will of those for whom he was acting. However that may be, we are satisfied that the public has no such interest in the controversy as will authorize the plaintiff to maintain this action; and therefore the judgment of the district court will be reversed, and the cause remanded for further proceedings.

All the Justices concurring.